

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JMK:JN/AES
F. #2016R00709

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 11, 2017

**By Hand and ECF**

The Honorable Raymond J. Dearie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Odebrecht S.A.
     Criminal Docket Number: 16-643 (RJD)

Dear Judge Dearie:

   The government submits this memorandum on behalf of the parties in advance of the sentencing hearing scheduled in the above-captioned matter for April 17, 2017, at 10:00 a.m. As the Court is aware, the parties have entered into an agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) (the "Plea Agreement" or "PA") that sets forth an agreed-upon sentence consisting of the payment by defendant Odebrecht S.A. ("Odebrecht" or "the Company") of a criminal penalty (discussed in greater detail below), and the retention by Odebrecht of an independent compliance monitor for a period of three years. For the reasons set forth below, this sentence is sufficient but not greater than necessary to punish Odebrecht for its violations of the anti-bribery provisions of the Foreign Corrupt Practices Act ("FCPA").

**I.  Background**

   As set forth in the Plea Agreement, between approximately 2001 and 2016, Odebrecht – a Brazilian holding company that, through various operating entities, conducted business in multiple industries, including engineering, construction, infrastructure, energy, chemicals, utilities and real estate – knowingly and willfully conspired with others to corruptly provide millions of dollars in payments to, and for the benefit of, foreign officials, foreign political parties, foreign political party officials and foreign political candidates to secure an improper advantage and to influence those foreign officials, foreign political parties, foreign political party officials and foreign political candidates in order to obtain and retain business in various countries around the world, including Brazil. (See PA Appendix B ¶¶ 19-70). Many of the corrupt payments were made through a secret financial structure that became known as the Division of Structured Operations ("DSO"). (Id. ¶ 21). To conceal its activities, the DSO utilized an entirely separate and off-book communications system called "Drousys," which allowed members of the DSO to communicate with one another and with outside financial operators and other co-conspirators about the bribes through the use of secure emails and instant

Hon. Raymond J. Dearie
April 11, 2017
Page 2

messages, utilizing codenames and passwords.  (Id. at ¶ 21).  Executives and officers at the highest levels of Odebrecht were knowledgeable of and participated in the corrupt scheme.  During the relevant period, Odebrecht, along with its co-conspirators, paid approximately $788 million in bribes in association with more than 100 projects in twelve countries, including Angola, Argentina, Brazil, Colombia, Dominican Republic, Ecuador, Guatemala, Mexico, Mozambique, Panama, Peru and Venezuela.  (Id. at ¶ 20).  Odebrecht, together with its co-conspirators, received approximately $3.336 billion in ill-gotten benefits.

Furthermore, after Odebrecht became aware of an investigation by Brazilian law enforcement authorities into corrupt payments made by Odebrecht, as well as other related investigations launched in the United States and Switzerland, employees and executives took steps to conceal or destroy evidence of criminal activities and to hinder the various investigations.  (Id. at ¶¶ 71-73).

On December 21, 2016, Odebrecht waived indictment and pled guilty before this Court, pursuant to the Plea Agreement, to a one-count criminal Information charging it with conspiracy to commit offenses against the United States, in violation of Title 18, United States Code, Section 371, that is, to violate the anti-bribery provisions of the FCPA.

## II.     Applicable Guidelines Range and Proposed Sentence

As set forth in the Plea Agreement, the defendant's applicable Guidelines offense level can be calculated as follows (see PA ¶ 20):

Offense Level—Bribery Conduct (Highest Offense Level).  Based upon USSG § 2C1.1, the total offense level is 48, calculated as follows:

| | | | |
|---|---|---|---|
| (a)(2) | Base Offense Level | | 12 |
| (b)(1) | Multiple Bribes | | +2 |
| (b)(2) | Value of Benefit more than $550,000,000 | | +30 |
| (b)(3) | High Level Official Involved | | +4 |
| | **Total Offense Level** | | 48 |

Base Fine.  Based upon USSG § 8C2.4(a)(2), the base fine is $3.336 billion.

Hon. Raymond J. Dearie
April 11, 2017
Page 3

<u>Culpability Score</u>.  Based upon USSG §§ 8C2.5 and 8C4.1, the culpability score is 9, calculated as follows:

| | | | |
|---|---|---|---|
| (a) | Base Culpability Score | | 5 |
| (b)(1)(A)(i) | 5,000 or More Employees and Participation by High-Level Personnel | | +5 |
| (e) | Obstruction of Justice | | +3 |
| (g)(2) | Self-Disclosure and Cooperation | | -2 |
| 8C4.1 | Substantial Assistance Against Others | | <u>-2</u> |
| | **TOTAL** | | **9** |

<u>Calculation of Fine Range</u>:

| | |
|---|---|
| Base Fine (USSG § 8C2.4(a)(2)) | $3.336 billion |
| Multipliers (USSG § 8C2.6) | 1.8 (min)/ 3.6 (max) |
| Fine Range (USSG § 8C2.7) | $6.0048 billion to $12.0096 billion |

  Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed in the Plea Agreement that the appropriate total criminal penalty is $4,503,600,000, which reflects a 25 percent discount off the bottom of the applicable Sentencing Guidelines fine range.  (PA ¶ 21(a)).  Based on Odebrecht's representations that it had an inability to pay a penalty in excess of $2,600,000,000, including anticipated adjustments for exchange rates between the United States Dollar and the Brazilian Real and interest payments, the parties agreed that the criminal penalty was subject to the government's completion of an independent analysis to verify the accuracy of Odebrecht's representations regarding its ability to pay the fine.  (PA ¶ 21(c)).  At the time the plea agreement was entered into, the United States expected to receive, subject to the Company's ability to pay, 10 percent of the principal of the total criminal penalty plus 10 percent of any interest that accrued on that amount between the date of the Plea Agreement and the date of the payment (approximately $117 million), which was set in the Plea Agreement to be no later than June 30, 2017.  (PA ¶ 21(d)).  The Plea Agreement contemplated that the total criminal penalty would be offset by the amount Odebrecht would pay Brazil and Switzerland over the full term of their respective agreements.  (<u>Id.</u>)  In addition, as part of the Plea Agreement, Odebrecht agreed to retain an independent compliance monitor for a period of three years. (PA ¶¶ 30-32).

Hon. Raymond J. Dearie
April 11, 2017
Page 4

As contemplated in the Plea Agreement, the government, along with the Brazilian authorities, completed an independent analysis of the Company's ability to pay the criminal penalty. (PA ¶ 21(c)). The analysis has determined, and the parties agree: (i) that the Company has an inability to pay a total criminal penalty in excess of $2,600,000,000, including anticipated adjustments for exchange rates between the United States Dollar and the Brazilian Real and interest payments, to the United States, Brazil, and Switzerland on the time schedules allotted by their respective agreements; (ii) that the Company has the ability to pay, and will pay, $93 million to the United States before June 30, 2017, as required by the Plea Agreement (the "US Penalty"); (iii) that the Company has the ability to pay, and will pay, an amount that is at least the equivalent of the US Penalty to Brazil before December 31, 2021; and (iv) that the Company will pay the balance owed on the total criminal penalty (including anticipated adjustments for exchange rates between the United States Dollar and the Brazilian Real and interest payments) to Brazil and Switzerland on the time schedules allotted by their respective agreements.

### III.     The Proposed Sentence is Appropriate

The government respectfully submits that the factors set forth in 18 U.S.C. § 3553(a) weigh in favor of the proposed sentence, which combines a significant criminal penalty – $2.6 billion – with the imposition of an independent compliance monitor for a period of three years. The parties arrived at the proposed sentence, based in part, on the application of the Principles of Federal Prosecution of Business Organizations, U.S.A.M. 9-28.000 (the "Principles of Federal Prosecution"), the Department of Justice, Criminal Division, Fraud Section Guidance for the evaluation of FCPA-related cases (the "FCPA Guidance") and an analysis of Odebrecht's ability to pay the criminal penalty, as discussed above. As a result, the proposed sentence avoids unwarranted sentencing disparities among similarly situated defendants. See 18 U.S.C. § 3553(a)(6). The proposed sentence is also appropriate given the nature and circumstances of the offense; the history and characteristics of Odebrecht; and the need for deterrence for similar conduct. See 18 U.S.C. §§ 3553(a)(1) & (a)(2).

####      A.     Consideration of the Principles of Federal Prosecution
         and the FCPA Guidance

As noted above and set forth in the Plea Agreement, the proposed criminal penalty reflects a 25 percent discount off the bottom of the applicable Sentencing Guidelines fine range. This discount reflects Odebrecht's performance across a number of key factors considered by the government in the prosecution of business organizations generally, and FCPA-related cases specifically; namely: (1) the nature and seriousness of the offense; (2) the pervasiveness of the wrongdoing within the corporation; (3) the corporation's history of similar misconduct; (4) whether the corporation timely and voluntarily disclosed the wrongdoing; (5) the corporation's willingness to cooperate in the investigation of its agents; (6) the existence and

Hon. Raymond J. Dearie
April 11, 2017
Page 5

effectiveness of the corporation's pre-existing compliance program; (7) the corporation's remedial actions; (8) collateral consequences; (9) the adequacy of remedies such as civil or regulatory enforcement actions; and (10) the adequacy of the prosecution of individuals responsible for the corporation's malfeasance.  See Principles of Federal Prosecution.

Here, the proposed sentence takes into account the seriousness of the offense – an extensive and egregious bribery scheme spanning a decade and a half to secure billions in ill-gotten benefits.  It also reflects the pervasive nature of the misconduct, including the involvement of high-level Odebrecht officials.  Given the significant nature and extent of the misconduct, prosecution of individuals and/or civil and regulatory remedies are insufficient alone to achieve a fair and just outcome and promote respect for the law.

Although Odebrecht notified the Fraud Section about publicly-reported allegations in Brazil prior to the government contacting Odebrecht, the Company was not eligible for voluntary disclosure credit because the allegations were already being publicly reported, and the U.S. government was already aware of the allegations.  (PA ¶ 2(a)).

The proposed sentence reflects the fact that Odebrecht received full cooperation credit for its cooperation with the government's investigation.  As detailed in the Plea Agreement, Odebrecht provided the government with substantial assistance during the course of its investigation, including reviewing, collecting and producing evidence located in foreign countries; analyzing and summarizing voluminous accounting records and providing those summaries to the government; producing documents that were provided to foreign authorities along with translations; facilitating the cooperation of its former executives in Brazil as part of Brazilian leniency proceedings; and providing information to the government summarizing non-privileged facts relating to projects obtained or retained through bribery and relating to individuals and companies involved in various illegal schemes.  (PA ¶ 2(b)).

Moreover, although Odebrecht had inadequate anti-corruption controls and little or no anti-corruption compliance program during the period of the conduct described in the Plea Agreement, Odebrecht has been enhancing and has committed to continue to enhance its anti-corruption compliance program and internal controls, including ensuring that its compliance program satisfies the minimum elements set forth in Attachment C to the Plea Agreement.  Because Odebrecht has not yet fully implemented or tested its compliance program, the proposed sentence includes Odebrecht's retention of an independent compliance monitor to reduce the risk of recurrence of misconduct.  (PA ¶¶ 2(d) & (e)).  As of the time of this filing, the parties have selected a monitor, and the monitor has already commenced work pursuant to the Plea Agreement.

In addition, the proposed sentence reflects the fact that Odebrecht has engaged in a number of remedial measures.  These measures include: (i) terminating the employment of 51

Hon. Raymond J. Dearie
April 11, 2017
Page 6

individuals who participated in the misconduct described in the Statement of Facts, (ii) disciplining an additional 26 individuals who were engaged in the misconduct, including suspensions of up to a year and a half, significant financial penalties, and demotion to non-managerial, non-supervisory, non-decision making roles, for each of the 26 individuals, (iii) requiring individualized anti-corruption compliance and business ethics training for each of the 26 individuals, and requiring each to be subject to heightened oversight and day-to-day supervision, including ensuring that the independent compliance monitor described in Attachment D has full access and authority to evaluate the business activities and ongoing compliance of those individuals, (iv) creating a Chief Compliance Officer position that reports directly to the Audit Committee of the Board of Directors, (v) adopting heightened controls and anti-corruption compliance protocols, including hospitality and gift approval procedures, (vi) incorporating adherence to compliance principles into employee performance evaluation and compensation, (vii) increasing the number of employees dedicated to compliance by 50 percent; and (viii) more than doubling the resources devoted to compliance in 2016 and more than tripling the budget for 2017.  (PA ¶ 2(c)).

Lastly, Odebrecht has no criminal history.

As a result, and consistent with the Principles of Federal Prosecution and the FCPA Guidance, the 25 percent discount off the bottom of the U.S. Sentencing Guidelines fine range is appropriate in this case to achieve a fair and just outcome and promote respect for the law.

B. **Application of the 3553(a) Factors**

The proposed sentence is also consistent with 18 U.S.C. § 3553(a), as it is sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant.

The resolution in this case is significant and tailored to the offense – a guilty plea; a criminal fine of $2.6 billion paid to the United States, Brazil and Switzerland; the imposition of an independent compliance monitor for a three-year term; ongoing reporting obligations; and Odebrecht's continued obligations to enhance its compliance program and cooperate fully with authorities, among others.  Given the nature and circumstances of the offense and the history and characteristics of Odebrecht, this sentence accomplishes the purposes of 18 U.S.C. § 3553(a)(2), including the need for general deterrence given the difficulty of detecting and prosecuting sophisticated fraud schemes such as this one.  See, e.g., Harmelin v. Michigan, 501 U.S. 957, 988 (1991) (noting that "since deterrent effect depends not only upon the amount of the penalty but upon its certainty, crimes that are less grave but significantly more difficult to detect may warrant substantially higher penalties").

Hon. Raymond J. Dearie
April 11, 2017
Page 7

Moreover, because the proposed sentence was based on an application of the Principles of Federal Prosecution and the FCPA Guidance – which achieves consistency and transparency for corporate prosecutions related to FCPA violations – it avoids unwarranted sentencing disparities with other similarly situated corporations.  See 18 U.S.C. § 3553(a)(6).

**IV.     Conclusion**

For the reasons set forth herein, the parties respectfully request that the Court impose the proposed sentence.

FOR THE U.S. DEPARTMENT OF JUSTICE:


BRIDGET M. ROHDE                                        ANDREW WEISSMANN
Acting United States Attorney                           Chief, Fraud Section
Eastern District of New York                            Criminal Division
                                                        U.S. Department of Justice


/s/ Alixandra Smith                                     /s/ Christopher Cestaro
Alixandra Smith                                          Christopher Cestaro
Julia Nestor                                             David Last
Assistant U.S. Attorneys                                 David Fuhr
                                                         Lorinda Laryea
                                                         Kevin R. Gingras
                                                         Trial Attorneys



Cc:     Clerk of the Court (RJD)
        All Counsel (By ECF)